UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

TAUREAN CARTER,

        Plaintiff,

v.

UNKNOWN MCCAULEY et al.,

        Defendants.
_____/

Case No. 1:23-cv-450

Honorable Jane M. Beckering

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants McCauley, Walziack, McBride, Gilbert, and Moyer. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bauchin, Addis, and Hadden: First Amendment claims, Fourth Amendment claims, Eighth Amendment excessive force claims, Fourteenth Amendment equal protection and due process claims, and ADA claims. Plaintiff's

Eighth Amendment failure to protect claims against Defendants Bauchin, Addis, and Hadden will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.[1] The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC officials: Warden Unknown McCauley; Deputy Warden Unknown Walziack; Assistant Deputy Warden Unknown McBride; Resident Unit Managers Unknown Bauchin, Unknown Addis, and Unknown Hadden; and Inspectors Unknown Gilbert and Unknown Moyer. (Am. Compl., ECF No. 10, PageID.26–28.)

In Plaintiff's amended complaint, he alleges that on January 31, 2020, he was placed in segregation "for a fight" and "assault on staff," both of which occurred in Unit 5. (*Id.*, PageID.29.) At Plaintiff's August 17, 2020, Security Classification Committee (SCC) hearing, Plaintiff asked non-party assistant resident unit specialist (ARUS) Ritter to place Plaintiff in Unit 4. (*Id.*) On August 28, 2020, Plaintiff was sent to Unit 5. (*Id.*) Plaintiff states that four hours later, he was assaulted by another inmate. (*Id.*) After the assault by the other inmate, an unnamed non-party correctional officer "slammed [Plaintiff] on [his] face." (*Id.*) Plaintiff states that his nose was broken. (*Id.*) Thereafter, Plaintiff was placed in Unit 8 "on a[] Notice of Intent [for] Protection"

---

[1] *See* MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=812293 (last visited June 20, 2024).

for one month and was then moved to administrative segregation for three months. (*Id.*) Plaintiff claims that "[a] hearing was never conducted." (*Id.*)

From August of 2020 through December of 2020, Plaintiff "wrote numerous kites [and] grievances requesting to be released from segregation to housing unit[s] 2 (protective custody), 4, or 6." (*Id.*) Plaintiff sent kites to Defendant Bauchin on September 10, 2020 and September 15, 2020, "explaining to him that [Plaintiff's] safety [wa]s endangered if placed in housing unit 5." (*Id.*) Plaintiff "also spoke verbally with [Defendant] Bauchin" on September 14, 2020, "explaining that [Plaintiff would] not [be] safe in Unit 5." (*Id.*) Plaintiff claims that Defendant Bauchin advised Plaintiff that he would "only be[] released to Unit 5." (*Id.*) Plaintiff also sent kites to Defendants McCauley, Walziack, McBride, Gilbert, and Moyer "informing them that Unit 5 [wa]s not safe for [Plaintiff] due to the enemies [Plaintiff had] made over there [and] that he's trying to place [Plaintiff] in a hostile environment." (*Id.*, PageID.29–30.)

On October 5, 2020, Plaintiff "received a kite response back" from Defendant McBride explaining that Unit 2 was not an option. (*Id.*, PageID.30.) Subsequently, during Plaintiff's SCC hearing on December 21, 2020, Plaintiff told non-party ARUS Ritter and Defendant Hadden that Plaintiff's "wellbeing is endangered if sent to Unit 5." (*Id.*) Plaintiff claims that both "chose to neglect [his] warning[,] failing to protect [his] safety." (*Id.*) Thereafter, on December 23, 2020, Plaintiff was placed in Unit 5 "on the same rock with the guy who assaulted [Plaintiff] in August." (*Id.*) The next day, "another prisoner was sent to assault [Plaintiff]." (*Id.*) Plaintiff was then placed in segregation for fighting, and he remained in administrative segregation for 4.5 months. (*Id.*)

Plaintiff states that he submitted a grievance in April of 2021 against Defendant Addis "for discrimination" due to the amount of time that Plaintiff "was being forced to serve in segregation

3

compared to other inmates" and how Plaintiff "was repeatedly being placed back in the same unit." (*Id.*)

On April 28, 2021, Plaintiff was placed back in Unit 5 after he had told non-party ARUS Ritter and Defendant Addis that Unit 5 was a "hostile environment." (*Id.*) Thereafter, on April 30, 2021, "another prisoner was sent to assault [Plaintiff]." (*Id.*) Plaintiff was then sent to segregation for fighting, and he was in administrative segregation for four months before he was transferred to another correctional facility. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Fourth, and Eighth Amendments, as well as under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. (*Id.*, PageID.29.) Additionally, Plaintiff avers that Defendants violated his rights under the Americans with Disabilities Act (ADA). (*Id.*) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.32.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   First Amendment, Fourth Amendment, and ADA Claims

Although Plaintiff references the First and Fourth Amendments and the ADA when listing his claims in this suit (*see* Am. Compl., ECF No. 10, PageID.29), Plaintiff fails to allege any facts that would plausibly implicate the First or Fourth Amendment, or the ADA. (*See generally id.*) Indeed, Plaintiff alleges no facts suggesting that he was prevented from freely exercising his religion, that he was retaliated against, that he was subjected to an unreasonable search or seizure, or that he was discriminated against due to a disability. Under these circumstances, Plaintiff fails to state any claim upon which relief may be granted under the First Amendment, the Fourth Amendment, or the ADA, and such claims will be dismissed.

### B. Defendants McCauley, Walziack, Moyer, and Gilbert

Plaintiff alleges that he sent kites to Defendants McCauley, Walziack, Gilbert, and Moyer "informing them that Unit 5 [wa]s not safe for [Plaintiff] due to the enemies [Plaintiff had] made over there [and] that he's trying to place [Plaintiff] in a hostile environment." (Am. Compl., ECF No. 10, PageID.29–30.) Plaintiff presents no further allegations against these Defendants.

Although Plaintiff alleges that he sent kites to Defendants McCauley, Walziack, Gilbert, and Moyer regarding his concerns about Unit 5, Plaintiff does not allege any facts suggesting that these Defendants actually received the kites or that they had any involvement in his housing placement. Instead, Plaintiff seeks to hold these Defendants liable due to their supervisory positions. However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or kite. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> '[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.' *Shehee*,

> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that 'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants McCauley, Walziack, Gilbert, and Moyer engaged in any active unconstitutional behavior, or encouraged and condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Because Plaintiff has failed to allege that Defendants McCauley, Walziack, Gilbert, and Moyer engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them. Accordingly, Plaintiff's claims against Defendants McCauley, Walziack, Gilbert, and Moyer will be dismissed.

### C. Eight Amendment Claims

#### 1. Failure to Protect Claims

Plaintiff alleges that Defendants McBride, Bauchin, Addis, and Hadden failed to protect him from attacks from other inmates. (*See* Am. Compl., ECF No. 10, PageID.29–31.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show

that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

      a.     **Defendant McBride**

As to Defendant McBride, Plaintiff alleges that he sent kites to Defendants McCauley, Walziack, McBride, Gilbert, and Moyer "informing them that Unit 5 [wa]s not safe for [Plaintiff] due to the enemies [Plaintiff had] made over there [and] that he's trying to place [Plaintiff] in a hostile environment." (Am. Compl., ECF No. 10, PageID.29–30.) On October 5, 2020, Plaintiff "received a kite response back" from Defendant McBride explaining that Unit 2 was not an option. (*Id.*, PageID.30.) Plaintiff presents no further allegations against Defendant McBride.

Although Plaintiff alleges that he informed Defendant McBride about his concerns with being placed in Unit 5 and that Defendant McBride informed Plaintiff that Unit 2 was not an option for Plaintiff, Plaintiff fails to allege any facts suggesting that Defendant McBride had any involvement in Plaintiff's housing placement. That is, Plaintiff does not allege that Defendant

McBride was involved in placing Plaintiff in Unit 5, let alone that McBride was involved in placing Plaintiff in any housing unit. Instead, Defendant McBride's only involvement was to inform Plaintiff that he could not be housed in Unit 2. Plaintiff fails to explain, and the Court fails to discern, how this statement violated Plaintiff's constitutional rights. *Grinter*, 532 F.3d at 575–76 (discussing that alleged constitutional violations must be based on active unconstitutional behavior); *Greene*, 310 F.3d at 899.

Accordingly, Plaintiff fails to state an Eighth Amendment failure to protect claim against Defendant McBride.

### b. Defendants Bauchin, Addis, and Hadden

After Plaintiff was assaulted by an inmate in Unit 5 on August 28, 2020, Plaintiff alleges that he sent kites to Defendant Bauchin on September 10, 2020 and September 15, 2020, "explaining to him that [Plaintiff's] safety [wa]s endangered if placed [back] in housing unit 5." (Am. Compl., ECF No. 10, PageID.29.) Plaintiff "also spoke verbally with [Defendant] Bauchin" on September 14, 2020, "explaining that [Plaintiff would] not [be] safe in Unit 5." (*Id.*) Plaintiff claims that Defendant Bauchin advised Plaintiff that he would "only be[] released to Unit 5." (*Id.*) Thereafter, during Plaintiff's SCC hearing on December 21, 2020, Plaintiff told non-party ARUS Ritter and Defendant Hadden that Plaintiff's "wellbeing is endangered if sent to Unit 5." (*Id.*, PageID.30.) Plaintiff claims that both "chose to neglect [his] warning[,] failing to protect [his] safety." (*Id.*) Thereafter, on December 23, 2020, Plaintiff was placed in Unit 5 "on the same rock with the guy who assaulted [Plaintiff] in August." (*Id.*) The next day, "another prisoner was sent to assault [Plaintiff]." (*Id.*) Subsequently, on April 28, 2021, Plaintiff was placed back in Unit 5 after he had told non-party ARUS Ritter and Defendant Addis that Unit 5 was a "hostile environment." (*Id.*) On April 30, 2021, "another prisoner was sent to assault [Plaintiff]." (*Id.*)

9

Here, Plaintiff alleges that despite repeated incidents in Unit 5 where other inmates attacked Plaintiff, Defendants Bauchin, Addis, and Hadden each had some involvement in Plaintiff's continued placement back in Unit 5 following stints in administrative segregation. Although Plaintiff's allegations regarding each Defendant's knowledge of the risk of harm to Plaintiff and each Defendant's involvement in Plaintiff's housing unit placement lack some specificity, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, the Court will not dismiss Plaintiff's Eighth Amendment failure to protect claims against Defendants Bauchin, Addis, and Hadden on initial review.

### 2. Excessive Force Claims

Plaintiff alleges that after the August 28, 2020 assault by another inmate, an unnamed non-party correctional officer "slammed [Plaintiff] on [his] face." (Am. Compl., ECF No. 10, PageID.29.) Plaintiff states that his nose was broken. (*Id.*) The Court construes this allegation to raise an Eighth Amendment excessive force claim. However, Plaintiff does not allege that any of the named Defendants were involved in this incident.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). And, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff fails to allege any facts to show that any of the named Defendants were involved in this alleged use of force. Under these circumstances, Plaintiff fails to state an Eighth Amendment excessive force claim against Defendants. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation

10

of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

### D. Fourteenth Amendment Claims

#### 1. Equal Protection Clause

Plaintiff states that he submitted a grievance in April of 2021 against Defendant Addis "for discrimination" due to the amount of time that Plaintiff "was being forced to serve in segregation compared to other inmates" and how Plaintiff "was repeatedly being placed back in the same unit." (Am. Compl., ECF No. 10, PageID.30.) The Court construes this statement to raise a Fourteenth Amendment equal protection claim against Defendant Addis.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that the other inmates he references were similarly situated in all relevant respects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### 2. Due Process Clause

Plaintiff alleges that following an attack by another inmate on August 28, 2020, he was placed in administrative segregation for three months without a hearing regarding the placement. (Am. Compl., ECF No. 10, PageID.29.) The Court construes this allegation to raise a Fourteenth Amendment due process claim.

As an initial matter, Plaintiff fails to identify any individuals who were involved in his placement in segregation without a hearing, let alone any named Defendants. For that reason alone, Plaintiff's due process claim can be dismissed. *See, e.g.*, *Frazier*, 41 F. App'x at 764.

Turning to the merits of Plaintiff's due process claim, "[t]he Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been

12

interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to the Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Further, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Additionally, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be held in a specific security classification. *See id.* at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29.

Here, Plaintiff alleges that he was placed in administrative segregation for three months following the August 28, 2020, attack by another inmate without a hearing, and he also alleges

13

than on two other occasions, he was placed in administrative segregation for approximately four months for fighting. (Am. Compl., ECF No. 10, PageID.29–30.) Plaintiff does not allege that his placement in administrative segregation affected the duration of his sentence, and, as explained below, he fails to show that his placement in segregation constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest). Under the circumstances alleged by Plaintiff, he has failed to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants McCauley, Walziack, McBride, Gilbert, and Moyer will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bauchin, Addis, and Hadden: First Amendment claims, Fourth Amendment claims, Eighth Amendment excessive force claims, Fourteenth Amendment equal protection and due process claims, and ADA

14

claims. Plaintiff's Eighth Amendment failure to protect claims against Defendants Bauchin, Addis, and Hadden remain in the case.

      An order consistent with this opinion will be entered.


Dated:    June 24, 2024                      /s/ Jane M. Beckering
                                                            Jane M. Beckering
                                                            United States District Judge